No. 2—09—0833
Opinion filed March 31, 2011

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 09—CM—2933 |
| ASHLEY K. NASH, | ) ) | Honorable John J. Scully, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justice Zenoff concurred in the judgment and opinion.
Justice Bowman dissented, with opinion.

**OPINION**

Defendant, Ashley K. Nash, was driving her car with a teenager and a small child riding as

passengers. A police officer, Nathan Hucker of the Zion police department, stopped the car because

defendant was not wearing her seat belt. See 625 ILCS 5/12—603.1(a) (West 2008). The officer

determined that defendant's driving privileges had been suspended, and defendant could not produce

an insurance card. Defendant was arrested, handcuffed, and placed in the backseat of the squad car.

While waiting for a tow truck to impound the vehicle, the officer conducted an inventory search and

found under the driver's seat evidence that caused defendant to be charged with attempted unlawful

possession of a controlled substance. See 720 ILCS 570/402(c) (West 2008); 720 ILCS 5/8—4(a) (West 2008).

Defendant moved to suppress the evidence on the ground that, when the vehicle was searched, the officer did not have a reasonable suspicion that there was evidence that needed to be preserved in connection with the offense of driving with a suspended license. The trial court granted the motion, and the State appeals. The State argues that defendant's suspended license and her inability to show proof of insurance at the time of the stop meant that her car could not be driven legally, and therefore the inventory search that disclosed the contraband was reasonable under the fourth amendment. Defendant responds that the vehicle did not need to be impounded, because the officer did not ask the teenage passenger whether she (1) had a valid driver's license, (2) could produce proof that the car was insured, and (3) was willing to take possession of the car. We reverse the suppression order and remand the cause for further proceedings.

FACTS

On June 10, 2009, defendant was charged with attempted unlawful possession of a controlled substance in that defendant, with the intent to commit the offense of unlawful possession of a controlled substance, performed a substantial step toward the commission of that offense. The charge alleged that defendant possessed an object that contained methylenedioxymethamphetamine (MDMA), also known as ecstasy, which is a controlled substance. See 720 ILCS 570/402(c) (West 2008); 720 ILCS 5/8—4(a) (West 2008).

On June 19, 2009, defendant moved to suppress the evidence. Defendant conceded that the seat belt violation was a valid basis for the traffic stop. However, defendant asserted that, once she was arrested and placed in the backseat of the squad car, the officer did not have a reasonable

suspicion that there was evidence that needed to be preserved in connection with the offense of driving with a suspended license.

At the hearing on the motion to suppress, Hucker testified to the traffic stop. On May 21, 2009, Hucker stopped defendant for driving while not wearing her seat belt. See 625 ILCS 5/12—603.1(a) (West 2008). Defendant pulled over and parked in front of a house in a residential area. The car was not blocking traffic or a driveway. Defendant had two passengers, a small child and a teenage female.

Hucker asked defendant for her driver's license and proof of insurance. Defendant told the officer that her license and insurance card were at home. Defendant provided her name, address, and date of birth. A license check established that defendant's driving privileges had been suspended. The home address that defendant provided was about four blocks from the location of the stop.

Another officer arrived, and Hucker directed defendant to walk to the rear of her vehicle. Hucker handcuffed defendant and told her that she was under arrest. Hucker led defendant to the front of his squad car, performed a quick patdown with the back of his hand, and placed her in the backseat of his squad car. Meanwhile, the other officer watched the teenage passenger, whom Hucker believed to be defendant's daughter or niece, and the small child. Defense counsel asked Hucker whether the teenage passenger could have been 16, 17, 18, or 19 years old, and Hucker answered "yes." The two passengers were allowed to leave and "sent on [their] way," but they waited near the scene for someone to give them a ride.

Hucker concluded that (1) defendant's driving privileges were suspended, (2) defendant could not provide proof that the car was insured, and (3) "there was no other available immediate driver to take the vehicle." Based on his assessment of the scene, Hucker summoned a tow truck to

impound the vehicle. While waiting for the tow truck, Hucker began an inventory search of the vehicle, using a "vehicle tow report," which is a form used by Zion police officers. While defendant was in the backseat of the squad car and the two passengers stood nearby, the two officers filled out the tow report with defendant's information, the condition of the vehicle, and the property found inside. Under the driver's seat, Hucker found a half of a bright yellow tablet inside a small blue plastic bag. Based on his experience, Hucker suspected that the pill was ecstasy. On the tow report, Hucker checked boxes showing that the reasons for the tow were the narcotics seizure and the arrestee's control of the vehicle. Defendant was transported to the police station, where Hucker told her that he found a pill in her car.

Hucker testified that the Zion police department has guidelines for impounding a vehicle. An officer conducts an inventory search if the vehicle is impounded. The entire car is searched for any items of value, and the items are noted on the tow report to protect the defendant's property and to protect the department from false claims of loss. The search is not designed to discover narcotics or other kinds of contraband, but if the officer comes across something that looks like contraband, he investigates further. Hucker testified that the department guidelines are "oral and written" but not specified by ordinance.

Hucker testified that he did not bother to ask the teenage passenger if she could drive the car, because no one could operate the car legally if it was uninsured. Although defendant could not produce an insurance card, she told Hucker that the car was insured. Hucker did not ask for the name of the insurance company.

During argument, the parties stipulated that defendant's car was, in fact, insured at the time of the traffic stop. Defendant argued that the impoundment and inventory search were improper

because (1) the car was legally parked and did not hinder traffic, (2) Hucker should have investigated whether the teenage passenger could have driven the car from the scene, and (3) the car actually was insured. The State responded that, at the time of the stop, Hucker had no affirmative duty to investigate defendant's undocumented claim that the car was insured or to ask the teenage passenger if she was eligible to drive the car from the scene. In fact, the State argued that defendant, not Hucker, had the burden of showing proof of insurance and that her failure to meet that burden created a presumption that the car was uninsured. According to the State, defendant's suspended license and the presumption of a lack of insurance required that the car be impounded.

The trial court agreed with defendant and suppressed the evidence. The court emphasized that, although there was no insurance card in defendant's vehicle, the car was, in fact, insured. The court found that, when the car was stopped, it was legally parked in a residential area. The court also found that there was evidence of a Zion police department oral policy that called for towing and impounding a vehicle when the driver lacks insurance and a valid driver's license, but that there was "no evidence" of a written policy or an ordinance.

The court found that the department's oral policy provided for no exceptions to towing, such as when proof of insurance "could be readily available," the car is parked legally, and the car could be removed by a passenger or someone else. The court found that, while there was "no evidence" that the teenage passenger was a licensed driver, she might have been licensed and the officer did not investigate the matter.

The trial court held that "there were alternative means here that were reasonable for the officer to have taken that would not violate the fourth amendment." The court emphasized that, before initiating the tow, Hucker should have determined whether the teenage passenger could

produce a valid driver's license and "readily obtainable proof of insurance." The court noted that Hucker could have seized the car keys and locked the doors while the teenage passenger walked four blocks to defendant's home and retrieved the insurance card. Despite finding that Hucker acted in good faith and that defendant did not show proof of insurance at the scene, the court determined that the police should not have impounded and searched the car, because it was, in fact, insured.

The State moved for reconsideration of the suppression, and the trial court denied the motion on August 10, 2009. On the same date, the State timely filed a notice of appeal and a certificate of impairment.

## ANALYSIS

The burden of proof is on the defendant at a hearing on a motion to suppress evidence. 725 ILCS 5/114—12(b) (West 2008); *People v. Lampitok*, 207 Ill. 2d 231, 239 (2003). If the defendant makes a *prima facie* case that the evidence was obtained through an illegal search, the State can counter with its own evidence. *Lampitok*, 207 Ill. 2d at 239.

When reviewing a trial court's suppression ruling, this court applies a two-part standard of review. *People v. Cosby*, 231 Ill. 2d 262, 271 (2008); *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). The trial court's factual findings are entitled to great deference, and we will reverse them only if they are against the manifest weight of the evidence. *Cosby*, 231 Ill. 2d at 271. However, a reviewing court " 'remains free to undertake its own assessment of the facts in relation to the issues,' " and we review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *Cosby*, 231 Ill. 2d at 271 (quoting *Luedemann*, 222 Ill. 2d at 542-43).

In this case, the operative facts are undisputed. The trial court found that, at the time of the traffic stop, the Zion police department had an oral policy that called for impounding and towing a vehicle if the driver had a suspended license and could not produce proof of insurance. The court found that there was "no evidence" of a written policy to that effect, but that finding is not consistent with Hucker's testimony that a written policy existed. Regardless, the absence of a written impoundment policy does not render an inventory search *per se* unreasonable. *People v. Gipson*, 203 Ill. 2d 298, 306, 309 (2003). Because the operative facts of this case are not disputed, we agree with the parties that our review of the suppression order is *de novo*. See *People v. Mitchell*, 355 Ill. App. 3d 1030, 1032 (2005).

The State argues that the inventory search was appropriate because defendant was driving with a suspended license and failed to show proof of insurance. Defendant responds that the inventory search was unreasonable because the car was, in fact, insured and Hucker "failed to afford the defendant or her 16 to 19 year old passenger an opportunity to provide proof of insurance for the car."

The fourth amendment " 'protects two types of expectations, one involving "searches," the other "seizures." ' " *Soldal v. Cook County, Illinois*, 506 U.S. 56, 63 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Although the parties have commingled the concepts of search and seizure, the impoundment of the car (the "seizure") is properly analyzed as distinct from the inventory (the "search"). *Soldal*, 506 U.S. at 63-64 (one can search property without seizing it and seize property without searching it). Both the seizure and the search must meet the strictures of the fourth amendment.

The leading case of *South Dakota v. Opperman*, 428 U.S. 364 (1976), explains why police impoundments and inventory searches are treated as distinctive processes, which are warranted in different but frequently overlapping circumstances. Impoundments may be in furtherance of "public safety" or "community caretaking functions," such as removing "disabled or damaged vehicles" and "automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." *Opperman*, 428 U.S. at 368-69. An impoundment must either be supported by probable cause or be consistent with the police role as "caretaker" of the streets and completely unrelated to an ongoing criminal investigation. *Opperman*, 428 U.S. at 370 n.5.

When a vehicle is lawfully impounded, an inventory search is a judicially created exception to the warrant requirement of the fourth amendment. *Gipson*, 203 Ill. 2d at 304 (citing *People v. Hundley*, 156 Ill. 2d 135, 138 (1993)). The Supreme Court has identified three objectives that are served by allowing inventory searches: (1) protection of the owner's property; (2) protection of the police against claims of lost or stolen property; and (3) protection of the police from potential danger. *Gipson*, 203 Ill. 2d at 304 (citing *Opperman*, 428 U.S. at 369). To be deemed reasonable, the inventory search must further these objectives, and it will satisfy the fourth amendment as long as the police procedures are reasonable and administered in good faith. *People v. Clark*, 394 Ill. App. 3d 344, 348 (2009). The procedures need not be in writing if the police act according to standardized department procedures for conducting inventory searches. *Gipson*, 203 Ill. 2d at 306, 309; *Clark*, 394 Ill. App. 3d at 348.

Three criteria must be met for a valid warrantless inventory search of a vehicle: (1) the original impoundment of the vehicle must be lawful; (2) the purpose of the inventory search must be

to protect the owner's property, to protect the police from claims of lost, stolen, or vandalized property, and to guard the police from danger; and (3) the inventory search must be conducted in good faith pursuant to reasonable standardized police procedures and not as a pretext for an investigatory search. *Hundley*, 156 Ill. 2d at 138.

## A. The Impoundment

The threshold issue in considering whether the police have conducted a valid inventory search incident to a tow is whether the impoundment of the vehicle was proper. See *People v. Mason*, 403 Ill. App. 3d 1048, 1054 (2010); *Clark*, 394 Ill. App. 3d at 348. Pursuant to their community-caretaking function, police have authority to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience. *Opperman*, 428 U.S. at 369; *Mason*, 403 Ill. App. 3d at 1054; *Clark*, 394 Ill. App. 3d at 348. However, the fact that the defendant's car would be left unattended without the tow is not a sufficient reason for impoundment unless the vehicle would be parked illegally. *Mason*, 403 Ill. App. 3d at 1054; *Clark*, 394 Ill. App. 3d at 348.

Hucker testified that he followed Zion police department guidelines that require an officer to impound a vehicle and perform an inventory search when (1) the driver lacks a valid license, (2) there is no proof of insurance, and (3) no other driver is available to take the vehicle. For the following reasons, we determine that the Zion police department guidelines are consistent with the Illinois Vehicle Code (625 ILCS 5/1—100 *et seq.* (West 2008)) and relevant case law regarding impoundments.

Several principles of statutory interpretation are relevant to the threshold issue of whether the impoundment of the vehicle was proper pursuant to the Vehicle Code. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Donoho*, 204 Ill.

2d 159, 171 (2003). The best evidence of legislative intent is the statutory language. When possible, a court should interpret the statute according to the plain and ordinary meaning of the language. *Donoho*, 204 Ill. 2d at 171. In determining legislative intent, the court should consider, in addition to the statutory language, the reason for the law, the problems to be remedied, and the objects and purposes sought. *Donoho*, 204 Ill. 2d at 171-72. A statute is ambiguous if it is subject to two or more reasonable interpretations. *Donoho*, 204 Ill. 2d at 172. When the statute contains undefined terms, we may employ a dictionary to ascertain the plain and ordinary meaning of those terms. *People v. Davison*, 233 Ill. 2d 30, 40 (2009). Where the language is clear and unambiguous, we will apply the statute without resort to further aids of statutory construction. The construction of a statute is a question of law, which is reviewed *de novo*. *Davison*, 233 Ill. 2d at 40.

Defendant concedes that the Vehicle Code authorized Hucker to initiate the traffic stop because she was driving without wearing her seat belt. See 625 ILCS 5/12—603.1 (West 2008). Defendant further concedes that she was driving with a suspended license and that her car did not contain an insurance card to show that the vehicle was insured. See 625 ILCS 5/6—303(a) (West 2008).

No person shall operate a motor vehicle designed to be used on a public highway unless the vehicle is covered by a liability insurance policy (625 ILCS 5/7—601(a), 3—707(a) (West 2008)), and every operator of such a motor vehicle shall carry within the vehicle evidence of insurance (625 ILCS 5/7—602 (West 2008)). "The evidence of insurance shall be displayed upon request made by any law enforcement officer wearing a uniform or displaying a badge or other sign of authority." 625 ILCS 5/7—602 (West 2008). Furthermore, "[a]ny person who fails to comply with a request by a law enforcement officer for display of evidence of insurance, as required under Section 7—602 of this

Code, shall be deemed to be operating an uninsured motor vehicle." 625 ILCS 5/3—707(b) (West 2008). Because defendant failed to comply with Hucker's request for evidence of liability insurance, she was deemed to be operating an uninsured motor vehicle at the time of the stop.

Because (1) defendant was driving with a suspended license (see 625 ILCS 5/6—303(a) (West 2008)) and (2) defendant was deemed to be operating an uninsured motor vehicle (see 625 ILCS 5/3—707(b) (West 2008)), section 6—303(e) of the Vehicle Code required the officer to impound the vehicle (625 ILCS 5/6—303(e) (West 2008)). Section 6—303(e) provides in relevant part that a person who is driving with a suspended or revoked license and "who is also in violation of Section 7—601 of this Code relating to mandatory insurance requirements, in addition to other penalties imposed under this Section, shall have his or her motor vehicle immediately impounded by the arresting law enforcement officer." 625 ILCS 5/6—303(e) (West 2008).

Pointing out that the car was insured but did not contain an insurance card, defendant argues that she did not violate the insurance *policy* mandate of section 7—601, but instead violated the insurance *card* mandate of section 7—602. Because section 6—303(e) refers to a violation of section 7—601 and not section 7—602, defendant argues that the impoundment was not statutorily authorized. We disagree. When a driver is stopped with a suspended license, section 6—303(e) requires impoundment for a "violation of Section 7—601 of this Code *relating to mandatory insurance requirements.*" (Emphasis added.) 625 ILCS 5/6—303(e) (West 2008). Because she did not show evidence of insurance (see 625 ILCS 5/3—707(b) (West 2008)), defendant was deemed to be operating an uninsured vehicle, and operating a motor vehicle without liability insurance is a violation of section 7—601. Thus, showing evidence of liability insurance is among the mandatory insurance requirements embodied in section 7—601.

*Opperman* teaches that impoundments by the police may be in furtherance of "public safety" or "community caretaking functions," such as removing "disabled or damaged vehicles." *Opperman*, 428 U.S. at 368-69 (to permit the uninterrupted flow of traffic, disabled or damaged vehicles will often be removed from the highways or streets at the behest of the police engaged solely in caretaking and traffic-control activities). In this case, defendant's car, without proof of liability insurance, was tantamount to a disabled vehicle because section 6—303(e) prohibited it from being operated until proof of insurance was shown. Thus, the impoundment, as mandated by section 6—303(e), furthered police community-caretaking functions and was reasonable under the fourth amendment.

### 1. *Mason*

Our conclusion is consistent with *Mason*, which addressed a challenge to an inventory search. At 2:10 a.m., Mason committed a traffic violation, and an officer stopped Mason's vehicle. Mason's driver's license was revoked, he could not provide proof of insurance, and the officer suspected that Mason was under the influence of alcohol. The officer called for backup, arrested Mason, and placed him in the rear seat of the squad car. An inventory search disclosed a substance that caused Mason to be charged with possession of a controlled substance. *Mason*, 403 Ill. App. 3d at 1050. The officer testified that Mason's revoked license and his inability to show proof of insurance meant that the car had to be towed, which in turn required an inventory search and report. *Mason*, 403 Ill. App. 3d at 1050-51. The officer explained that " 'state law,' " rather than police department policy, mandated the impoundment. *Mason*, 403 Ill. App. 3d at 1052.

The trial court granted Mason's suppression motion, concluding that *Arizona v. Gant*, 556 U.S. ___, 129 S. Ct. 1710 (2009), " 'is a bright line decision ' " that bars inventory searches. *Mason*, 403 Ill. App. 3d at 1052. In *Gant*, the United States Supreme Court clarified the

search-incident-to-arrest exception that applies to the warrantless search of a vehicle. *Gant*, 556 U.S. at ___, 129 S. Ct. at 1716. The Court emphasized that there are two circumstances under which a search of a vehicle incident to a lawful arrest is permissible. See *Gant*, 556 U.S. at ___, 129 S. Ct. at 1719. Under the first circumstance, law enforcement may search "a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 556 U.S. at ___, 129 S. Ct. at 1719. The second circumstance justifying the search of a vehicle incident to an arrest occurs "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " *Gant*, 556 U.S. at ___, 129 S. Ct. at 1719 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004)).

Upon concluding that the search of Mason's vehicle did not match either of the acceptable circumstances described in *Gant*, the Appellate Court, Third District, held that *Gant* "did not expressly overrule those cases in which courts have sanctioned inventory searches pursuant to the proper impoundment of a vehicle." *Mason*, 403 Ill. App. 3d at 1055. The appellate court further held that the impoundment and ensuing inventory search were proper. The court emphasized the officer's testimony that, when a driver has a suspended or revoked license and there is no insurance for the vehicle, a tow is mandated. Although the officer was uncertain about the basis for the mandate, his decision to tow was based on a standardized procedure that was itself based on the cognizable reason that an uninsured vehicle operated by a driver with a revoked or suspended license must be towed. The court deemed the procedure a legitimate exercise of law enforcement's caretaking function, because section 7—601 prohibits the operation on a public highway of a motor vehicle that is not covered by a liability insurance policy. *Mason*, 403 Ill. App. 3d at 1055.

2. *Duguay*

Defendant relies on *United States v. Duguay*, 93 F.3d 346 (7th Cir. 1996), in arguing that the impoundment was not a proper exercise of community caretaking. We note that Illinois state courts are not bound to follow federal court decisions, but such decisions can provide guidance and serve as persuasive authority. *Lamar Whiteco Outdoor Corp. v. City of West Chicago*, 355 Ill. App. 3d 352, 360 (2005).

In *Duguay*, a violent-crimes task force set up a roadblock as part of a sweep in and around federally funded housing projects in Alton. The police saw Duguay riding as a passenger in a car driven by his girlfriend, who was a resident of a housing project. The officers recognized Duguay as someone who (1) had sold crack to undercover agents in the past, (2) had been associated with a certain narcotics distribution ring, and (3) was a resident of a different housing project. *Duguay*, 93 F.3d at 348, 350. To avoid the roadblock, the woman parked the car and the two occupants exited and walked toward her apartment. The police approached the couple, an argument ensued, Duguay struck an officer, and he was arrested. The disturbance attracted a crowd, including Duguay's brother. Duguay told his girlfriend not to surrender the car keys. An officer told the woman that he was going to impound the car and demanded the keys. The woman refused and was arrested for obstruction of justice. Within 10 minutes of Duguay's arrest, the officers unlocked the car and began an inventory search, which disclosed a substantial amount of crack cocaine. *Duguay*, 93 F.3d at 349.

After affirming the district court's decision that the officers had a reasonable suspicion for the investigative stop, the Seventh Circuit Court of Appeals held that the impoundment and subsequent warrantless inventory search of the vehicle were illegal. The Seventh Circuit concluded that (1) the conflicting testimony of the officers indicated that the Alton police department did not use a standardized impoundment procedure (*Duguay*, 93 F.3d at 352), and (2) even if the department had

articulated a coherent policy for impounding the vehicle, basing the impoundment on the arrestee's status as a driver, owner, or passenger is "irrational and inconsistent with 'caretaking' functions" (*Duguay*, 93 F.3d at 353).

Surmising that the purported policy required towing "any time the arrestee is carted off to jail, regardless of whether another person could have removed the car and readily eliminated any traffic congestion, parking violation, or road hazard," the Seventh Circuit determined that the impoundment was unreasonable because Duguay's girlfriend had been driving the car, possessed the keys, and was prepared to remove the car from the street and also because Duguay's brother was present and also might have been able to move the car. *Duguay*, 93 F.3d at 353. The Seventh Circuit added that "[t]he policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets." *Duguay*, 93 F.3d at 353.

First, we note that the Seventh Circuit's commentary on the caretaking function of the impoundment policy in *Duguay* is *dicta* because the fourth amendment issue was decided based on the State's failure to articulate a standardized impoundment procedure. The fact-specific holding in *Duguay* does not apply to this case.

Second, the purported impoundment policy in *Duguay* is distinguishable from the impoundment mandate of section 6—303(e) of the Vehicle Code. The police procedure in *Duguay* was deemed to be unreasonable because it did not consider the possibility that the vehicle could be removed legally without impoundment. In contrast, here, section 6—303(e) mandated impoundment *because* the vehicle could not be removed legally. Neither the teenage passenger nor anyone coming to defendant's aid could operate the vehicle without liability insurance (see 625 ILCS 5/7—601(a),

3—707(a) (West 2008)), and the absence of insurance was established at the scene by defendant's failure to show an insurance card (see 625 ILCS 5/3—707(b) (West 2008)).

The *Duguay* court explained, "we do not see what purpose denying possession of the car to a passenger, a girlfriend, or a family member could possibly serve." *Duguay*, 93 F.3d at 353. In contrast, Hucker did not *deny* possession of the vehicle to the teenage passenger or anyone else because no one at the scene asked for it. Moreover, the purpose of impounding the car in this case was clear: preventing an uninsured vehicle from being operated in violation of the Vehicle Code.

### 3. *Harrington*

Defendant next argues that this case is similar to *Harrington v. Heavey*, No. 04—C—5991, 2006 WL 3359388 (N.D. Ill. Nov. 16, 2006) (not reported in F. Supp. 2d). Harrington filed a civil rights action against various police officers, alleging that the impoundment of her car violated her fourth and fourteenth amendment rights. Based on a minor traffic violation, Officer Heavey stopped a vehicle driven by Harrington's son, who was driving with an expired license. *Harrington*, 2006 WL 3359388, at *1. The officer issued citations for speeding and driving without a valid license. The officer seized the car pursuant to a city ordinance that mandated the seizure of vehicles driven by persons not possessing valid licenses. After being stopped, the driver called Harrington, who arrived at the scene. Harrington showed the officer her valid license and proof of liability insurance, and she asked for the car. The officer refused and impounded the vehicle. Later that evening, Harrington regained custody of the car after paying the city's $500 administrative seizure fee and towing charges. *Harrington*, 2006 WL 3359388, at *1. Seeking damages, Harrington's complaint alleged that the impoundment was unreasonable under the fourth amendment and that the seizure ordinance's lack

of pretowing and adequate posttowing hearing procedures violated the fourteenth amendment. *Harrington*, 2006 WL 3359388, at *1.

In determining whether the impoundment was reasonable under the fourth amendment, the district court stated, "the decision to impound pursuant to the seizure ordinance does not, in and of itself, determine the reasonableness of the seizure. Instead, reliance on and reference to the seizure ordinance merely raises the relevant legal question of whether the City's mandatory impoundment policy serves the police's community caretaking function such that impoundments under that policy are reasonable under the Fourth Amendment." *Harrington*, 2006 WL 3359388, at *5. Relying on *Duguay*, the district court found the seizure ordinance unconstitutional because it "deprives the City's officers from considering alternatives to impoundment and thus, from determining whether community caretaking interests justify impoundment in a particular instance." *Harrington*, 2006 WL 3359388, at *5.

The *Harrington* court commented that, even if the impoundment policy were discretionary, the seizure was unreasonable under the circumstances where Harrington provided at the scene proof that she was the owner, she had a valid license and proof of insurance, she was prepared to remove the vehicle herself, and there was no indication that she was impaired or otherwise incapable of lawfully operating the vehicle. *Harrington*, 2006 WL 3359388, at *5.

Like *Duguay*, *Harrington* is distinguishable from this case because the impoundment mandate of section 6—303(e) is based in part on the absence of liability insurance (as established by lack of proof of insurance), which would prevent a car from being removed from the scene legally. *Harrington* stands for the proposition that adherence to an impoundment policy does not necessarily

render an impoundment reasonable under the fourth amendment, but defendant does not allege that section 6—303(e) is unconstitutional.

The parties stipulated at the hearing that the vehicle was, in fact, insured; but Hucker did not know that at the time of the impoundment. Moreover, Hucker had little reason to believe defendant when she told him that the car was insured. Besides insisting that the car was insured, defendant also had said that her driver's license was at home, which gave the false impression that her driving privileges were not suspended. Regardless of defendant's credibility, the absence of proof of insurance at the scene meant that defendant was deemed to be operating an uninsured motor vehicle. See 625 ILCS 5/3—707(b) (West 2008). If the teenage passenger had shown a valid license, volunteered to promptly retrieve proof of insurance from defendant's home, agreed to remove the vehicle, and been not otherwise impaired from lawfully operating the vehicle, one could argue that impoundment would have been unreasonable under the fourth amendment. However, no such offer was made and defendant's assertion that the teenage passenger could have removed the vehicle lawfully is speculative at best. Regardless, it would be unreasonable and unduly burdensome to require the officer to remain at the scene and wait an indeterminate period for someone to possibly return and cure the conditions that mandated the impoundment.

### 4. *Young*

Despite the unambiguous impoundment mandate of section 6—303(e) of the Vehicle Code, the trial court concluded that there were alternative means that a reasonable police officer would have taken that would not have violated defendant's fourth amendment rights, such as locking the car and seizing the keys until proof of insurance was produced. Defendant echoes the trial court's position,

arguing that the impoundment was unreasonable because the officer should have pursued less intrusive alternatives to facilitate the removal of the vehicle.

Defendant cites *People v. Young*, 363 Ill. App. 3d 268 (2006), for the proposition that, before conducting the inventory search, the officer should have attempted to cure the conditions that had mandated the impoundment. In *Young*, a car was pulled over for a minor traffic violation, and the driver was arrested for driving with a suspended license. The officer summoned a tow truck but did not tell the driver or Young, who was a passenger. Before the tow truck arrived, the officer performed an inventory search and found marijuana in the trunk. Young admitted that the drugs were his. After Young was arrested, another passenger in the car told the officer that he had a valid license. The officer canceled the tow and allowed the passenger to drive the vehicle from the scene. *Young*, 363 Ill. App. 3d at 269. Young argued that, before inventorying the car, the officer should have asked Young and the other passenger if either could legally remove the car to avoid impoundment.

At the suppression hearing, the officer testified that the State Police policy on inventory searches calls for towing and searching a vehicle if none of the occupants is a licensed driver, and the State argued that the policy did not require the officer to investigate whether a licensed driver was present before searching the vehicle. The Appellate Court, Third District, disagreed, holding that the policy must inherently contain such a requirement. *Young*, 363 Ill. App. 3d at 270. The court concluded that an officer must ask the passengers because "[i]t is unreasonable to assume that passengers will automatically and affirmatively volunteer that they are licensed drivers. If officers do not query other occupants of the vehicle, the policy would have little meaning." *Young*, 363 Ill. App. 3d at 271. The appellate court affirmed the trial court's suppression order, concluding that, once the

driver was in custody, the State Police policy inherently required the officer to ask the two passengers if either had a valid license. *Young*, 363 Ill. App. 3d at 271.

Relying on *Young*, defendant argues that Hucker should have seized the car keys, locked the doors, and asked the teenage passenger whether she could produce a valid driver's license and proof that the car was insured. Defendant argues that, if the teenage passenger produced a valid license and proof of insurance at the scene, Hucker should have permitted her to remove the car. Defendant alternatively asserts that, if the teenage passenger was a licensed driver but had no proof of insurance, the officer should have afforded her the opportunity to walk to defendant's home and retrieve an insurance card.

While Hucker testified that the teenage passenger might have been of legal driving age and the parties stipulated that the car was insured, the record is devoid of any evidence of (1) the teenage passenger's name, (2) whether the teenage passenger was a licensed driver, (3) whether the teenage passenger possessed an insurance card at the scene, (4) whether a valid insurance card for the vehicle was four blocks from the scene at defendant's home, as defendant asserts, (5) whether the teenage passenger had access to the home, and (6) whether the teenage passenger was impaired in any way that would have prevented her from removing the vehicle.

Hucker testified that he was familiar with the Zion police department impoundment procedures but that he was unaware of any policy that required an officer to investigate whether any occupant of the vehicle had proof of insurance and a valid license. Moreover, the Vehicle Code is silent as to how an officer stopping a vehicle should deal with passengers when the driver has a suspended or revoked license and no insurance card. Section 6—303(e) provides that, after a vehicle is impounded based on the driver's invalid license and lack of insurance, "[t]he motor vehicle *may*

be released to any licensed driver upon a showing of proof of insurance for the vehicle that was impounded and the notarized written consent for the release by the vehicle owner." (Emphasis added.) 625 ILCS 5/6—303(e) (West 2008). Thus, neither the Zion police department policy nor the statute requires an officer to investigate the presence of a licensed driver and facilitate the showing of proof of insurance.

Even if we were to read into the Zion police department impoundment policy and the Vehicle Code the requirement of asking passengers whether they possess valid driver's licenses, the reason for the tow (the failure to show proof of insurance) would not be cured. This case is distinguishable from *Young*, where proof of insurance was never at issue. We decline to extend *Young* to require an officer to ask a passenger to produce proof of insurance for a car when the driver cannot produce it.

### B. The Inventory Search

Our determination that section 6—303(e) of the Vehicle Code mandated the impoundment does not end our analysis, as defendant argues that the inventory search was a fourth amendment violation. Hucker testified that, consistent with the police department's procedures for impounding and inventorying vehicles, the officers prepared the vehicle tow report, which included defendant's information, the condition of the vehicle, and a description of property found inside. Hucker testified that an officer must conduct an inventory search if a vehicle is impounded; the entire car is searched for any items of value, and the items are noted on the tow report to protect the defendant's property and to protect the department from false claims of loss. He further testified that the search is not designed to discover narcotics or other kinds of contraband.

We hold that the State met the three criteria for a valid warrantless inventory search of a vehicle. First, section 6—303(e) of the Vehicle Code and the Zion police department guidelines

mandated the original impoundment of the vehicle. Second, the trial court heard unrebutted evidence that the purpose of the inventory search was to protect the owner's property and to protect the police from claims of lost, stolen, or vandalized property. Third, the trial court found that Hucker conducted the inventory search in good faith. The inventory search was pursuant to reasonable standardized police procedures and was not a pretext for an investigatory search. See *Hundley*, 156 Ill. 2d at 138. Thus, the trial court erred in entering the suppression order.

CONCLUSION

In conclusion, we hold that the trial court erroneously suppressed the evidence. Section 6—303(e) of the Vehicle Code required the officer to impound the vehicle because (1) defendant was driving with a suspended license (see 625 ILCS 5/6—303(a) (West 2008)) and (2) defendant was deemed to be operating an uninsured vehicle, because she failed to show proof of liability insurance (see 625 ILCS 5/3—707(b) (West 2008)). See 625 ILCS 5/6—303(e) (West 2008). Because the impoundment was mandated by the Vehicle Code and the officer testified in detail regarding his adherence to the procedures for impounding and inventorying the vehicle, we conclude that the search was reasonable. Under these circumstances, where the teenage passenger of undetermined age did not attempt to establish at the scene that the vehicle could be removed legally, the fourth amendment did not require the officer to investigate methods to facilitate the removal of the vehicle to avoid the impoundment.

For the preceding reasons, the judgment of the circuit court of Lake County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

JUSTICE BOWMAN, dissenting:

I respectfully dissent because I believe that the trial court correctly granted defendant's motion to suppress. The " 'essential purpose' of the fourth amendment is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officers to safeguard the privacy and security of individuals against arbitrary invasions." *People v. McDonough*, 239 Ill. 2d 260, 266 (2010) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979)). Here, it is undisputed that the home address that defendant provided was about four blocks away from the location of the stop. Officer Hucker presumably could have verified the address through the license check that led to defendant's arrest. As in *Young*, I believe that Hucker should have asked the teenager, whom Hucker admitted could have been 16 to 19 years old, whether she was a licensed driver. If so, the reasonable course of action would have been to allow the teenager to go to the home and retrieve proof of insurance, which would have led to both the teenager driving the vehicle away and the elimination of the statutory basis for impounding the vehicle. Although the majority states that it would be unreasonable and unduly burdensome for an officer to have to wait an "indeterminate period" for this series of events (slip op. at 17), the officer could have easily provided a specific amount of time to retrieve the insurance card.

Even otherwise, I believe the vehicle's impoundment under the circumstances of this case violated defendant's fourth amendment rights. I recognize that the impoundment complied with section 6—303(e) of the Vehicle Code, but a seizure may comply with state law while still being unreasonable under the fourth amendment. *Sibron v. New York*, 392 U.S. 40, 61 (1968). I agree with the majority that an impoundment must either be supported by probable cause or be consistent with the police role as "caretaker" of the streets. Slip op. at 8. In the caretaker scenario, it follows that "[a]n officer cannot reasonably order an impoundment in situations where the location of the

vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers." *Miranda v. City of Cornelius*, 429 F.3d 858, 866 (9th Cir. 2005). Further, as the majority recognizes, the fact that a car would be left unattended does not justify impoundment unless the car would be parked illegally. Slip op. at 9. Here, defendant's car was parked in a residential area four blocks from her home and was not blocking traffic or a driveway. Slip op. at 3. The majority states that, because defendant did not have proof of insurance, her car was tantamount to a disabled vehicle because it could not be *operated* until proof of insurance was shown. Slip op. at 12. However, it does not logically follow that the car could not remain legally *parked* without proof of insurance. In other words, the legally parked car was not in any sense jeopardizing public safety or impeding the efficient movement of traffic, so its impoundment cannot be justified as a street caretaking function. Accordingly, I would hold that the vehicle's impoundment was unreasonable, and I would affirm the trial court's grant of defendant's motion to suppress.