NOTICE
Decision filed 06/18/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241268-U

NO. 5-24-1268

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 23-CF-453 |
| | ) | |
| NICHOLAS WALKER, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Presiding Justice Cates and Justice Hackett concurred in the judgment.

**ORDER**

¶ 1   *Held*: Trial counsel was not ineffective for failing to file a motion to suppress evidence, because defendant did not establish that the motion would have been granted. Where the oral sentencing pronouncement of the trial court is not consistent with the sentence set forth in the mittimus, we order the sentencing mittimus corrected to reflect a sentence of 30 months in the Illinois Department of Corrections.

¶ 2   Following a bench trial, defendant, Nicholas Walker, was convicted of possession of a controlled substance and drug paraphernalia. The Jackson County trial court sentenced defendant to 30 months in the Illinois Department of Corrections (IDOC) with one year of mandatory supervised release. On appeal, defendant argues that defense counsel was ineffective for failing to file a motion to suppress the inventory search that was conducted on the vehicle. For the reasons that follow, we affirm but order the sentencing mittimus corrected.

1

¶ 3                                    I. BACKGROUND

¶ 4     On August 15, 2023, the State charged defendant by three-count information with unlawful possession of methamphetamine (720 ILCS 646/60(a) (West 2022)), unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2022)), and unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2022)). On January 26, 2024, the State amended the information and charged defendant by two-count information with possession of a controlled substance (720 ILCS 570/402(c)) and unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a)).

¶ 5     Count I alleged that defendant knowingly and unlawfully possessed less than 15 grams of a substance containing psilocyn, a controlled substance, otherwise than as authorized in the controlled substances act, a Class 4 felony. The trial court noted that defendant was extended term eligible, meaning the range of punishment was one to six years in IDOC. Count II alleged that defendant knowingly and unlawfully possessed items of drug paraphernalia, that being a scale that bore a white crystalline residue that field tested positive to be methamphetamine and a medication bottle used to hold a substance containing psilocyn, commonly referred to as psychedelic mushrooms, with the intent to use it for ingesting, inhaling, or otherwise introducing a controlled substance into the body or in preparing a controlled substance for that use, a Class A misdemeanor.

¶ 6     On October 31, 2023, the matter proceeded to a preliminary hearing. Officer Noah Wunderlich, a police officer for the City of Murphysboro, testified. On Friday, December 2, 2022, he conducted a traffic stop on a black Toyota on the 2100 block of Logan Street in Murphysboro, Illinois. Officer Wunderlich performed a registration check based on the license plate on the Toyota, but the "plate came back to a Lexus." On cross-examination, Officer Wunderlich clarified

2

that he "couldn't see" the registration on the vehicle, so he "did a registration check and ran it through" dispatch.

¶ 7     Officer Wunderlich made contact with defendant. Defendant "said it was his" vehicle. Defendant advised Officer Wunderlich that "it had come into his possession from an inheritance" but he "never transferred the registration or paid attention to the registration." Officer Wunderlich arrested defendant. A search of the vehicle was conducted "pursuant to the vehicle inventory" and Officer Wunderlich located a scale with white crystalline residue. The residue field tested positive for methamphetamine. There was also a medicine bottle with "a couple of mushrooms." The mushrooms were processed by the Illinois State Crime Lab and found to be psychedelic mushrooms.

¶ 8     On April 15, 2024, following admonishments by the trial court, defendant waived the right to a trial by jury. On July 9, 2024, the matter proceeded to a bench trial.

¶ 9     Officer Wunderlich was called as the State's first witness. On Friday, December 2, 2022, Officer Wunderlich was on routine patrol and conducted a stop on a black Toyota sedan. When Officer Wunderlich initially observed the Toyota, he "couldn't tell if there was a registration sticker on it" so he "performed a registration check" and discovered that the plate came back on a Lexus vehicle. Officer Wunderlich conducted a traffic stop by activating his emergency lights. The vehicle came to a stop, and Officer Wunderlich initiated contact with the driver. Officer Wunderlich identified defendant as the driver of the vehicle.

¶ 10    Officer Wunderlich advised defendant that the plates came back to a different vehicle, and defendant was "very surprised by that." Defendant advised that he received the vehicle from his parents' estate, and defendant never changed or altered the plates. Defendant provided Officer Wunderlich with proof of insurance, and Officer Wunderlich performed a VIN check. The VIN

3

check revealed that the vehicle was registered to James Walker and a different license plate was listed on the registration.

¶ 11    Officer Brett Rickenberg and Officer Shane Laughland later arrived. They provided "additional security" and in order to "assist with inventory and towing if that becomes part of the scope of the investigation."

¶ 12    Officer Wunderlich explained:

"A. A tow inventory is where we conduct a check of the vehicle to determine what items are within it—mostly for liability reasons, make sure there is not something valuable that needs to be documented so that if it comes up missing later we can say that it was absolutely in the vehicle or absolutely not in the vehicle.

Q. And what is Murphysboro Police Department's policy on conducting a tow inventory?

A. Any time we tow a vehicle where it is not going to be transported to the custody of the person we do a tow inventory. So, for example, if we had towed [defendant's] vehicle and it was just being towed to his house where he was going to meet it there, we wouldn't have conducted an inventory, but something where we administratively tow it or it's going to a tow yard for storage then we would have performed an inventory.

Q. And when you are doing a tow inventory, if items of evidentiary value are found what do you typically do with them?

A. We collect them.

Q. And once you collect them, what do you do with them?

A. We put them into evidence.

Q. Would you bag them prior to putting them into evidence?

4

A. Yes. We bag them, seal them, we mark our initials, badge number, and date that they are sealed, enter them into our evidence computer system for tracking, print off a label that is used for tracking by the evidence custodian, and then we'll put them in a secure temporary locker."

¶ 13   Officer Wunderlich testified that as part of the tow inventory, he or another officer would remove the plates from the vehicle. Officer Wunderlich stated that he did this because "they are evidence of the fact that those plates were on the vehicle." In this case, Officer Wunderlich removed the plates from defendant's vehicle, which were introduced as People's Exhibit A.

¶ 14   During the tow inventory of the vehicle, Officer Wunderlich located a pill bottle containing mushrooms. He also located a scale with white crystalline residue on it. The scale was located "in the back passenger floorboard." The white substance later field tested positive for the presence of methamphetamine.

¶ 15   Officer Wunderlich testified:

"Q. And then once the other officers arrived, the tow inventory was conducted, what took place then?

A. Well, the officers, other officers arrived and at least Officer Laughland and Officer Rickenberg stayed up with [defendant] while I conducted checks and double-checked everything within my vehicle or my mobile data computer.

After determining—we finally determined that we couldn't come up with a reason that those plates would be on that vehicle other than they were just improperly placed there on purpose, so [defendant] was then placed under arrest for improper use of evidence [of] registration, and then we conducted the tow inventory and towed it pursuant to department policy."

5

¶ 16    On cross-examination, Officer Wunderlich clarified that he was not able to see the vehicle registration sticker on the vehicle. However, he ultimately pulled defendant over, because when he ran the license plate information, the license plates did not match the vehicle he observed. Officer Wunderlich testified that the licensed plates were registered to a Lexus. The owner had not reported the plates stolen. The officers' attempt to contact the owner that evening was unsuccessful. Defendant was ultimately placed under arrest for "improper use of evidence [of] registration," which was a Class C misdemeanor. Officer Wunderlich testified that it was department policy to tow all vehicles for Class C misdemeanors.

¶ 17    On cross-examination, Officer Wunderlich testified that defendant advised that there were other occupants of the vehicle at one point in the evening. The scales were located on the back passenger floorboard. Officer Wunderlich testified that it was conceivable that another person could have left the scales in the vehicle.

¶ 18    The State next called Shane Laughland, a police officer for the City of Murphysboro. Officer Laughland assisted with the tow of the vehicle. Specifically, Officer Laughland completed the tow sheet and conducted the inventory of the vehicle. Officer Laughland testified that he stood with defendant and assisted with the tow of the vehicle. When asked how he participated in the administrative tow, he responded that he "assisted in completing the tow sheet as well as conducting the inventory on the vehicle." He testified that Wunderlich and Rickenberg were on-scene, too. He then laid a foundation for the introduction of the evidence removed from the vehicle.

¶ 19    Michelle Elliot, an evidence technician at the Illinois State Police Metro East Forensics Lab, testified next. Elliot worked in the Du Quoin evidence receiving station. Elliot testified about the process of receiving evidence at the lab. Kristine Dillow Benak, a forensic scientist with the

6

Illinois State Police, next testified. Benak testified that there was psilocin present in the mushroom material found in the vehicle.

¶ 20 The State concluded the presentation of its evidence. Defendant moved for a directed verdict, which the trial court denied. Defendant testified. Defendant testified that someone else was in the vehicle with him "three different times that day." Defendant testified that the "last individual" that he gave a ride to placed something the size of a lunch box in the back seat of the vehicle. Defendant specified that Jacob Clutts was the other person in the vehicle.

¶ 21 In closing argument, defense counsel stated:

"You also heard Officer Wunderlich say that he couldn't see the sticker because he was too far away so he just ran the plate which came back to a different vehicle. He also said that that was a Class C misdemeanor, to which they tow everybody's car on a Class C misdemeanor, new one to me.

Were it not for a Class C misdemeanor and my client's car being towed administratively per the rules of our town here, my client wouldn't be sitting here now."

¶ 22 Following the presentation of the evidence and listening to the arguments of the parties, the trial court found defendant guilty of both counts.

¶ 23 The matter proceeded to sentencing on October 8, 2024. In its oral pronouncement, the trial court sentenced defendant to "two and a half years, 30 months" in IDOC. On October 21, 2024, the court entered a judgment of conviction sentencing defendant to 36 months in IDOC with "up to one-year MSR based upon the Prisoner Review Board Determination."

¶ 24 On November 4, 2024, defendant filed a timely notice of appeal.

¶ 25                                      II. ANALYSIS

¶ 26    On appeal, defendant argues that trial counsel was ineffective for failing to file a motion to suppress the inventory search that was conducted on the vehicle. The State responds, arguing that responding officers acted in conformity with standardized department policies, and therefore, defendant is unable to establish that the motion to suppress would have been granted. For the reasons that follow, we affirm.

¶ 27    Claims of ineffective assistance of counsel are evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). See *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting the *Strickland* standard). To prevail on a claim of ineffective assistance, a defendant must show counsel performed deficiently and the deficient performance prejudiced the defendant. *People v. Gilker*, 2023 IL App (4th) 220914, ¶ 76. To establish deficient performance, the defendant must show "counsel's performance 'fell below an objective standard of reasonableness.' " *People v. Hodges*, 234 Ill. 2d 1, 17 (2009) (quoting *Strickland*, 466 U.S. at 687-88). To establish prejudice, the defendant must show, "absent counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *Gilker*, 2023 IL App (4th) 220914, ¶ 77.

¶ 28    In deciding whether counsel was deficient, "[c]ourts must indulge a strong presumption that counsel's conduct is sound trial strategy." *People v. Quezada*, 2024 IL 128805, ¶ 60 (citing *Strickland*, 466 U.S. at 689). " 'A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness.' " *People v. Bradford*, 2019 IL App (4th) 170148, ¶ 15 (quoting *People v. Simpson*, 2015 IL 116512, ¶ 35).

¶ 29    The decision whether to file a motion to suppress "is generally a matter of trial strategy, which is entitled to great deference." (Internal quotation marks omitted.) *People v. Gayden*, 2020

IL 123505, ¶ 28. "[W]here an ineffectiveness claim is based on counsel's failure to file a suppression motion, in order to establish prejudice under *Strickland*, the defendant must demonstrate that the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15. " 'A reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.' " *People v. Veach*, 2017 IL 120649, ¶ 30 (quoting *Simpson*, 2015 IL 116512, ¶ 35). "The failure to file a motion to suppress does not establish incompetent representation when the motion would have been futile." *People v. Patterson*, 217 Ill. 2d 407, 438 (2005).

¶ 30    The U.S. Supreme Court has held that "inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (citing *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983)). Nevertheless, the Supreme Court has assessed whether an inventory search is " 'reasonable' under the Fourth Amendment." *Id.* at 371-72. While an inventory search must be conducted pursuant to standardized police procedures, those procedures need not be in writing. *People v. Gipson*, 203 Ill. 2d 298, 306 (2003). "Inventory searches can be upheld solely on an officer's unrebutted testimony that he was following standard procedures." *Id.* at 309. Generally, a search of a vehicle is reasonable only if the police obtain a warrant supported by probable cause. *People v. Partin*, 2022 IL App (2d) 210445, ¶ 39. An inventory search of a lawfully impounded vehicle is an exception to the warrant requirement, but both the impoundment and the inventory search must be constitutionally reasonable. *Id.*

¶ 31    Impoundments may be in furtherance of "public safety" or "community caretaking functions," such as removing "disabled or damaged vehicles" and "automobiles which violate

9

parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." (Internal quotation marks omitted.) *People v. Nash*, 409 Ill. App. 3d 342, 347 (2011) (quoting *South Dakota v. Opperman*, 428 U.S. 364 (1976)). An impoundment must either be supported by probable cause or be consistent with the police role as "caretaker" of the streets and completely unrelated to an ongoing criminal investigation. *Id.* The law is clear that an inventory search must be conducted in good faith pursuant to reasonable standardized police procedures and not as a pretext for an investigatory stop. *People v. Hundley*, 156 Ill. 2d 135, 138 (1993).

¶ 32    Defendant contends that Officer Wunderlich's testimony conflicts with the City of Murphysboro's ordinances, which are attached as an appendix to defendant's brief. Defendant makes numerous arguments related to specific sections of the local ordinance. However, consideration of whether an officer properly conducted an inventory search hinges not on a local ordinance, but rather on the standardized police procedures. In the case before us, the record is devoid of any concrete evidence of what, exactly, the Murphysboro Police Department policy is, outside of Officer Wunderlich's unrebutted testimony. Our consideration of the merits of this claim thus hinges on whether Officer Wunderlich acted in conformity with standardized police procedures.

¶ 33    When asked about the policy on conducting a tow inventory, Officer Wunderlich testified that:

"Any time we tow a vehicle where it is not going to be transported to the custody of the person we do a tow inventory. So, for example, if we had towed [defendant's] vehicle and it was just being towed to his house where he was going to meet it there, we wouldn't have

10

conducted an inventory, but something where we administratively tow it or it's going to a tow yard for storage then we would have performed an inventory."

Officer Wunderlich also testified that:

"After determining—we finally determined that we couldn't come up with a reason that those plates would be on that vehicle other than they were just improperly placed there on purpose, so [defendant] was then placed under arrest for improper use of evidence [of] registration, and then we conducted the tow inventory and towed it pursuant to department policy."

Thus, the only evidence in the record on appeal is Officer Wunderlich's unrebutted testimony, which supports a conclusion that he acted in accordance with police procedures and policies in conducting an inventory search of the vehicle. While an inventory search must be conducted pursuant to standardized police procedures, those procedures need not be in writing. *Gipson*, 203 Ill. 2d at 306. "Inventory searches can be upheld solely on an officer's unrebutted testimony that he was following standard procedures." *Id.* at 309.

¶ 34 Pursuant to the community caretaking function, police officers have the authority to seize and remove from the streets vehicles that are impeding traffic or threatening public safety and convenience. *Nash*, 409 Ill. App. 3d at 348. Where the police impound a vehicle based on a cognizable reason, an inventory search is justified. *Id.* at 351. Here, the evidence indicates that the defendant was placed under arrest for improper use of evidence of registration. Officer Wunderlich testified that he then impounded the vehicle and conducted a tow inventory pursuant to the policy of his police department. Officer Wunderlich also seized the license plates from the vehicle as evidence to support the traffic charge. There was no evidence that defendant had anyone who could move the vehicle. Under these circumstances, the officers may have been concerned about leaving

11

the vehicle on the roadside, unattended and without license plates. Moreover, law enforcement attempted to contact the owner of the plates without success. Where law enforcement discovered that defendant was driving a motor vehicle with plates not registered to defendant or the vehicle he was driving, law enforcement could not, in good faith, leave a plate-less vehicle on the side of the road.

¶ 35    Finally, counsel's decision to forego a motion to suppress could have been a matter of trial strategy. See *Gayden*, 2020 IL 123505, ¶ 28. Defense counsel, an assistant public defender with the Jackson County public defender's office, presumably could have known the local policy and known that a motion to suppress would have been fruitless based on the specific facts of this case. As noted above, there is a strong presumption that counsel's conduct is sound trial strategy (*id.*) and "[t]he failure to file a motion to suppress does not establish incompetent representation when the motion would have been futile." *Patterson*, 217 Ill. 2d at 438.

¶ 36    As a general rule, matters of trial strategy, such as whether to file a motion to suppress, are immune from claims of ineffective assistance of counsel. *People v. Nunez*, 325 Ill. App. 3d 35, 42 (2001). Counsel's failure to file a motion to suppress does not establish incompetent representation when that motion would be futile; as it is a matter of trial strategy to file such a motion, counsel's decision will be accorded great deference. *People v. Pacheco*, 281 Ill. App. 3d 179, 183 (1996). Defendant must show that a reasonable probability exists both that the motion would have been granted and that the outcome of the trial would have been different had the evidence been suppressed. *People v. Lundy*, 334 Ill. App. 3d 819, 830 (2002).

¶ 37    The supreme court has identified three objectives that are served by allowing inventory searches: (1) protection of the owner's property, (2) protection of the police against claims of lost or stolen property, and (3) protection of the police from potential danger. *Gipson*, 203 Ill. 2d at

12

304. In the case before us, the impoundment was lawful where defendant was placed under arrest. The search was conducted to protect defendant's property, to protect the police from claims of lost, stolen, or vandalized property, and to guard the police from any danger. Finally, the inventory was conducted pursuant to procedure as testified by Officer Wunderlich. Based on the law and the evidence before us, Officer Wunderlich properly impounded and inventoried the vehicle.

¶ 38   Based upon this record, we cannot find that defendant has overcome the strong presumption that trial counsel decided to forego a motion to suppress as a matter of trial strategy or, alternatively, that he was prejudiced by counsel's decision not to file a motion to suppress. We also cannot conclude that a motion to suppress would have been either meritorious or that a reasonable probability exists that the outcome of the trial would have been different. *Henderson*, 2013 IL 114040, ¶ 15. Accordingly, we find that defendant has failed to meet either prong of *Strickland*. We therefore reject defendant's claim that trial counsel was ineffective.

¶ 39   Finally, we note that in its oral pronouncement, the trial court sentenced defendant to "two and a half years, 30 months" in IDOC. However, the October 21, 2024, judgment of conviction sentenced defendant to 36 months in IDOC with "up to one-year MSR based upon the Prisoner Review Board Determination." "When the oral pronouncement of the court and the written order are in conflict, the oral pronouncement controls." *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87. We correct the mittimus to reflect a sentence of 30 months in IDOC.

¶ 40                                III. CONCLUSION

¶ 41   For these reasons, the judgment of the trial court of Jackson County is affirmed. We do, however, correct the mittimus to reflect a sentence of 30 months in IDOC.

¶ 42   Affirmed; mittimus corrected.

13