2021 IL App (1st) 190459-U
No. 1-19-0459
Order filed November 15, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 09685 (02) |
| | ) | |
| KENNETH SPENCER, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Colleen A. Hyland, |
| | ) | Judge, presiding. |

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Walker and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held:* We affirm the dismissal of Spencer's postconviction petition at the second stage where he failed to make a substantial showing that trial counsel was ineffective for failing to move to suppress certain evidence, failing to move to produce the confidential source, or failing to present additional mitigation at his sentencing hearing.

¶ 2    Kenneth Spencer challenges the second-stage dismissal of his petition for relief under the

Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, following his conviction for possession

of a controlled substance (900 grams or more of cocaine) with intent to deliver. Spencer claims

the trial court erred in dismissing his petition because he made a substantial showing of a denial of his constitutional right to effective assistance of counsel. He specifically argues that trial counsel (i) failed to file a motion to quash arrest and suppress evidence; (ii) failed to file a motion to produce the identity of the DEA's confidential source; and (iii) failed to produce additional mitigation at sentencing.

¶ 3     The trial court properly dismissed Spencer's postconviction petition. The allegations in his petition and supporting documentation fall short of making the substantial showing of a constitutional deprivation as a matter of law, rendering a third-stage evidentiary hearing unnecessary. We affirm.

¶ 4                                   Background

¶ 5     We detailed the offense in our opinion resolving Spencer's direct appeal, *People v. Spencer*, 2016 IL App (1st) 151254, and co-defendant Jorge Morales. *People v. Morales*, 2016 IL App (1st) 151063-U. We also restated certain facts in our order affirming the second-stage dismissal of Morales's petition for post-conviction relief. *People v. Morales*, 2020 IL App (1st) 190452-U. We recite those facts relevant to resolving this particular appeal.

¶ 6     Spencer's arrest resulted from a long-term investigation that commenced when Drug Enforcement Administration (DEA) agent Donald Wood received a tip from a confidential source, as reports attached to Spencer's petition attest. The source told Wood that "Kenny" was a "wholesale cocaine distributor based in the Chicago area," and he owned a barbershop near 64th Street and Ashland Avenue where he allegedly stored and distributed cocaine. The source described "Kenny" as a "short, chubby, dark shinned [*sic*] male black." The source identified Spencer in a photograph as the individual whom he knew as "Kenny." Wood also learned that Spencer lived with his girlfriend and drove a black Audi with black rims.

¶ 7     The source also provided information about an unknown "Mexican male" from whom Spencer "regularly receive[d] between 10 to 15 kilograms of cocaine at a time." The source knew little about Spencer's cocaine supplier beyond being "based in the Chicago area." But the source learned that Spencer and his supplier planned "to travel to Arizona in the next couple of days" to purchase 10 kilograms of cocaine for $23,000 per kilogram.

¶ 8     In an affidavit, DEA agent Blake Smith attested that the confidential source provided a cellphone number for Spencer. According to the affidavit, for over two years, "the cooperating source has brokered approximately five narcotics transactions with Kenneth D. Spencer, who utilized [that number] exclusively." In addition, Smith suggested the source had reliably cooperated with law enforcement authorities "for approximately two months in an effort to gain consideration for an associate who [was then] incarcerated."

¶ 9     Smith's affidavit resulted in a judge granting the DEA a pen register on Spencer's cellphone. A "pen register" is a surveillance device that captures the number of a phone making a call and the number of the phone receiving it. Agents learned through telephone analysis that Spencer's cellphone was at the Comfort Inn in Grants, New Mexico. Wood communicated with Trooper Dena Willatto of the New Mexico State Police, who went to the Comfort Inn and learned that Spencer checked in with a Hispanic male (later identified as Morales) and a white male (later identified as co-defendant Jacob Force). Willatto viewed security footage from the Comfort Inn, which showed a maroon Mazda and a black Audi arriving together and Spencer, Morales, and Force at the hotel's check-in counter. Willatto obtained a copy of the video and mailed it to Wood.

¶ 10     Continued DEA telephone analysis showed Spencer headed south on Interstate 17. Wood contacted DEA agent Michael Chorzepa of the agency's office in Phoenix, AR. Chorzepa located "a maroon Mazda 3 bearing Texas registration *** and a black Audi A4 bearing Illinois

registration *** in tandem south bound on I-17." The Texas plate on the Mazda was registered to Hertz Vehicles LLC, and the Illinois plate on the Audi was registered to Spencer's girlfriend. Chorzepa and other agents followed both cars onto Interstate 10 going east, surveilling them until they left the Phoenix area. Along the way, Chorzepa saw Spencer, Morales, and Force stop at a Wells Fargo Bank.

¶ 11    On the evening of April 22, 2012, according to DEA telephone analysis, the trio began their trip back to Chicago. The next day, Wood contacted officers of the Cook County Sheriff's Police Department (CCSPD) assigned to a local task force and "advised his group had information that two cars traveled from Chicago to Arizona to pick up drugs." He mentioned that the cars "were en-route back to Chicago and were expected to arrive April 24th, 2012 at approximately 0600 hours."

¶ 12    Local task force officers met with DEA agents on the morning of April 24, 2012, to plan surveillance of the cars. They worked together to establish surveillance along Interstate 55 south of Interstate 80. Task Force Officer (TFO) Craig Clark saw the Audi and the Mazda "traveling north bound on I-55 in tandem with the Audi in the lead" roughly 80 miles from Chicago. Force was driving the Audi. Spencer was driving the Mazda with Morales beside him. Clark conducted "[m]obile surveillance," following the cars for about "an hour, hour and 20 minutes." He testified that the two cars moved in tandem while separated by other vehicle,; when one moved to the left or right, the other would do the same. DEA agents "arranged from [CCSPD investigators] to conduct traffic stops on the Audi and Mazda."

¶ 13    CCSPD Investigators Dimas Hernandez and Brian McNamara performed a traffic stop on the Audi on Interstate 294 south at 95th Street. Force, during the stop, told officers he had arranged to buy the car from Spencer. Force "gave written consent to search the Audi and signed a [CCSPD]

consent to search form." Hernandez contacted CCSPD K-9 Officer Jeffrey Ramos to perform a K-9 sniff, during which the dog jumped into the car through its open window, went to the rear seat, and started biting at the seam. Force was arrested. Shortly after officers stopped Force, CCSPD Investigators Jeffery Lange and TFO Robert Byrnes pulled over the Mazda "regarding this on going [*sic*] investigation" and arrested Spencer and Morales.

¶ 14    Force, Spencer, Morales, and the two cars were transported to the Palos Heights Police Department. There, CCSPD Investigator Kevin O'Reilly searched the Audi and discovered "an electronic hidden compartment located in the rear driver side quarter panel." DEA agent Garrett Malloy seized six brick-shaped packages wrapped in grey tape containing cocaine from within the compartment. He also found a receipt from the Comfort Inn. Malloy performed an inventory search of the Mazda, during which he seized multiple cellphones, a "rectangular shaped piece of sheet metal," a Comfort Inn receipt in Spencer's name, a Hertz receipt in Morales's name, a Walgreens receipt, and a Wells Fargo receipt.

¶ 15    The State charged Force, Morales, and Spencer with possession of a controlled substance (900 grams or more of cocaine) with intent to deliver. Under a plea deal with the State, Force testified against Morales and Spencer at their joint trial. The jury convicted both Morales and Spencer. Spencer and Morales were sentenced to 25 and 16 years in prison, respectively.

¶ 16    On direct appeal, Spencer argued (i) the evidence did not suffice to prove his guilt beyond a reasonable doubt because it failed to establish that he actually or constructively possessed the drugs within Illinois; (ii) the trial court erred in admitting a piece of metal and allowing testimony about it; (iii) the trial court erred in admitting Spencer's statements to Force under the coconspirator exception to the hearsay rule; (iv) his 25-year sentence was excessive; and (v) trial counsel was ineffective for failing to move to quash arrest for lack of probable cause and suppress

evidence subsequently seized from the Mazda. See *Spencer*, 2016 IL App (1st) 151254. While we affirmed Spencer's conviction, we declined to rule on his ineffectiveness claim, inviting him instead to raise it in a postconviction petition. *Id.*, ¶¶ 2, 43-44. We noted "there [was] little in the record about why the police arrested Spencer," and, absent this information, "we [could not] tell whether it was sufficient to constitute probable cause for the arrest" and "whether a motion to quash the arrest would have been successful." *Id.*

¶ 17    Spencer filed a petition for postconviction relief in which he argued trial counsel was ineffective for (i) failing to file a motion to quash arrest and suppress evidence, (ii) failing to file a motion to produce the identity of the DEA's confidential source, and (iii) failing to produce additional mitigation at sentencing. Spencer attached a copy of our decision in *Spencer*, 2016 IL App (1st) 151254, three DEA reports, Smiths' affidavit seeking a pen register on Spencer's phone, a CCSPD report, his affidavit, his girlfriend's affidavit, and three letters. The trial court granted the State's motion to dismiss Spencer's petition.

¶ 18                                    Analysis

¶ 19    Spencer argues that the trial court erred in dismissing his postconviction petition at the second stage. He claims he made a substantial showing of a denial of his constitutional right to effective assistance of counsel on each of the three grounds raised before the trial court. We agree with the trial court that Spencer failed to meet his burden under *Strickland v. Washington*, 466 U.S. 668 (1984). Thus, Spencer was unable to make a substantial showing of constitutional deprivation. In turn, we affirm the dismissal of his petition.

¶ 20                              Standard of Review

¶ 21    We apply a *de novo* standard to dismiss a postconviction petition absent an evidentiary hearing. *People v. Sanders*, 2016 IL 118123, ¶ 31. A challenge at the second stage turns on

"whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the [Post-Conviction Hearing Act]." *Id.* The petitioner must make a substantial showing of a constitutional deprivation to advance beyond the second stage. *People v. Edwards*, 197 Ill. 2d 239, 245 (2001). We independently assess the allegations set forth in the petition and supporting documentation. See *Sanders*, 2016 IL 118123, ¶ 31 (citing *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998)).

¶ 22                                Ineffective Assistance of Counsel

¶ 23    A defendant has the right to effective assistance of counsel. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. We evaluate claims of ineffective assistance using *Strickland*'s two-pronged test. *People v. Utley*, 2019 IL App (1st) 152112, ¶ 36 (citing *People v. Domagala*, 2013 IL 113688, ¶ 36). To prevail, a defendant must show both (i) deficient performance by counsel  (ii) prejudiced defendant. *Id.* (citing *Strickland*, 466 U.S. at 687). A defendant's "[f]ailure to make the requisite showing of either deficient performance or sufficient prejudice defeats the claim." *People v. Flowers*, 2015 IL App (1st) 113259, ¶ 41.

¶ 24    Where "easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *** that course should be followed." *Strickland*, 466 U.S. at 697. To demonstrate prejudice, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland*, 466 U.S. at 694). A reasonable probability "undermine[s] confidence in the outcome." *Strickland*, 466 U.S. at 694. Spencer cannot establish the requisite prejudice on any of his three claims. See, *e.g.*, *People v. Viramontes*, 2016 IL App (1st) 160984, ¶ 45.

¶ 25         *Counsel's Failure to Move to Quash Arrest and Suppress Evidence*

¶ 26    Where an ineffectiveness claim derives from trial counsel's failure to file a suppression motion, *Strickland* prejudice is shown by demonstrating both (i) the merit of the unfiled motion and (ii) a reasonable probability that had the evidence been suppressed, the outcome of the trial would have differed. *People v. Henderson*, 2013 IL 114040, ¶ 15. Spencer demonstrates neither.

¶ 27    Whether Spencer's unfiled motion to quash arrest and suppress evidence is "meritorious" depends on whether law enforcement had probable cause to arrest him and, in turn, whether the evidence seized constituted the fruit of an unlawful arrest. See, *e.g.*, *id.*, ¶ 16.

¶ 28    Both the United States and Illinois constitutions protect against unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Officers may make warrantless arrests only where they have probable cause, meaning "reasonable grounds to believe that the person is committing or has committed an offense." *People v. Lee*, 214 Ill. 2d 476, 484 (2005) (quoting 725 ILCS 5/107-2(1)(c) (West 2000)). Probable cause exists when "the totality of the facts and circumstances known to the officer is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime." *People v. Geier*, 407 Ill. App. 3d 553, 557 (2011); see also *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (noting, "[f]inely-tuned standards such as proof beyond a reasonable doubt or by the preponderance of the evidence *** have no place" in probable cause determination). Innocent explanations for some or all of the facts known to an individual police officer do not negate probable cause. *Id.*

¶ 29    Spencer stresses the facts of *People v. Lee* to draw an analogy. We find *Lee* readily distinguishable. In *Lee*, police officers investigated a citizen complaint about "three males selling drugs at the corner." *Lee*, 214 Ill. 2d at 478. The officers saw three men standing on the corner approach an arriving van and speak with its driver. *Id.* at 479. The officers saw no exchange of money or drugs. *Id.* They detained the men and found no weapons or contraband during a

protective pat-down. *Id.* Still, they arrested them for violating a municipal drug-loitering ordinance. *Id.* A search incident to the defendant's arrest revealed six baggies of cocaine in one of his pants pockets. *Id.* at 481. While our supreme court found the information in the citizen's complaint "sufficient to justify *** a *Terry* stop," it stressed that "the officers did not conduct any further investigation to raise their reasonable suspicion to the level of probable cause for a warrantless arrest." *Id.* at 488.

¶ 30    The investigation resulting in Spencer's arrest began when the confidential source informed Wood of Spencer's involvement in drug trafficking. But there ends any conceivable analogy to *Lee*. We disagree that "like the officers in *Lee*, Officer Lange jumped the gun by arresting Spencer." The police reports attached to Spencer's petition reveal an investigation sufficient to confirm the information provided by the confidential source.

¶ 31    Probable cause determinations involving a tip turn on the reliability of the informant. *People v. Monroy-Jaimes*, 2019 IL App (2d) 160426, ¶ 16. Reliability itself turns on the totality of the circumstances. *Id.*; see also *Gates*, 462 U.S. 213, 239 (1983). One measure of a tip's reliability assesses whether facts learned through the police investigation independently verify a substantial part of the tip. *Id.* And an informant may demonstrate knowledge of concealed criminal activity by "accurately predict[ing] future behavior, thus indicating that the informant has 'inside information.'" *Henderson*, 2013 IL 114040, ¶ 26 (citing *Alabama v. White*, 496 U.S. 325, 332 (1990)).

¶ 32    DEA agents independently corroborated substantial parts of the tip (including the confidential source's prediction that Spencer and Morales would travel together to Arizona) through an extensive investigation involving law enforcement agencies across the country. First, they identified "Kenny" as Spencer, verified the location of the barbershop, and confirmed the

cellphone number provided by the source belonged to Spencer. Next, they initiated a pen register on Spencer's cellphone and learned he was in New Mexico at a Comfort Inn. Willatto went to the Comfort Inn and reviewed security video to corroborate an unidentified Hispanic male with Spencer. Willatto also learned that Spencer, Morales, and Force had checked in together after arriving in a maroon Mazda and a black Audi. Chorzepa located the cars traveling through Arizona in tandem and confirmed the black Audi was registered to Spencer's girlfriend, whom the confidential source had identified.

¶ 33    DEA agents ascertained when Spencer began traveling back to Chicago by continuing to track his cellphone. Wood informed the local task force that "two vehicles traveled from Chicago to Arizona to pick up drugs" and were "en-route back to Chicago." DEA Agents met with task force officers on the morning of the arrests to discuss their surveillance. Clark followed the cars for over an hour as they traveled in tandem northbound. DEA agents arranged for task force officers to conduct traffic stops. Force drove the black Audi registered to Spencer's girlfriend. Spencer drove the Mazda with Morales in the front passenger's seat.

¶ 34    Spencer points to the absence of record evidence that any officer observed him doing something that would lead a reasonably cautious person to believe he had committed a crime. He suggests that a law enforcement officer personally observe or witness the commission of a crime before making an arrest, citing *People v. Wear*, 229 Ill. 2d 545 (2008). But he fails to consider that "[w]here officers are working together in investigating a crime, the knowledge of each constitutes the knowledge of all, and probable cause can be established from all the information collectively received by the officers." *People v. Ortiz*, 355 Ill. App. 3d 1056, 1179 (2005). Viewed together, the record and police reports attached to Spencer's petition reveal an investigation sufficient to give rise to probable cause for his arrest.

¶ 35    To establish probable cause, officers may rely on information obtained from other officers engaged in the same investigation. *People v. Williams*, 2020 IL App (1st) 172992, ¶ 10 (citing *People v. Corral*, 147 Ill. App. 3d 668, 673 (1986)). The so-called "collective knowledge doctrine" permits an officer to "stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer [themselves do] not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010) (citing *United States v. Hensley*, 469 U.S. 221, 232-33 (1985)). "There is no Fourth Amendment violation if the knowledge of the officer directing the stop, search, or arrest—or the collective knowledge of the agency for which he [or she] works—is sufficient to constitute probable cause." *Id.*

¶ 36    The collective knowledge doctrine applies where (i) the officer taking the action objectively relies on the information received, (ii) the officer or agency providing the information knows facts sufficient to support the level of suspicion required to take the action, and (iii) the action is no more intrusive than would have been permissible for the officer requesting it. *Id.* at 252-253. (citing *United States v. Nafzger*, 974 F.2d 906, 911 (7th Cir. 1992)). The officers who arrested Spencer relied on information provided by the DEA (which had established probable cause for the arrest), and the stop, arrest, and subsequent search were no more intrusive than would have been permissible had the DEA, or Wood himself, operated alone.

¶ 37    Lange's testimony confirms the DEA had directed him to stop the maroon Mazda occupied by Spencer and Morales. The record and Spencer's supporting documentation show the DEA agents had shared enough information with local officers to impute their knowledge of additional facts and circumstances under the collective knowledge doctrine. See, *e.g.*, *United States v. Rodriguez*, 831 F.2d 162, 166 (7th Cir. 1987) (applying doctrine where local officer conducting

traffic stop at DEA's request knew nothing about factual basis for agency's suspicion); *United States v. Celio*, 945 F.2d 180, 183 (7th Cir. 1991) (applying doctrine where local officers who stopped and searched vehicle at DEA's request knew only "bald assertion *** that [its agents] suspected drug trafficking.").

¶ 38    Because we have found probable cause to arrest, we assume (because Spencer does not dispute) that police properly impounded the Mazda and properly conducted an inventory search. See, *e.g.*, *People v. Nash*, 409 Ill. App. 3d 342, 347-48 (2011) (describing standards for impoundment and inventory searches). As a lawful arrest and search, any motion to suppress evidence would not have been meritorious, and Spencer's *Strickland* claim fails on that basis alone.

¶ 39    Assuming, however, that the arrest had been unlawful, Spencer also argues the trial outcome would have been different because the court would have suppressed this evidence seized from the Mazda: (i) the Comfort Inn receipt from Grants, New Mexico with Spencer's name on it; (ii) the Hertz rental receipt with Morales's name on; (iii) three cell phones; (iv) the Walgreens receipt from Tucson, Arizona; and (v) the piece of silver metal. We disagree.

¶ 40    Spencer asserts the evidence from the Mazda "corroborate[d] Force's testimony, transforming him from a liar into someone whom the jury was induced to believe." On the contrary, evidence beyond that recovered from the Mazda corroborates Force's testimony. The Comfort Inn receipt from Grants, NM, bearing Spencer's name duplicates both (i) the location information obtained through the pen register on Spencer's phone and (ii) the surveillance video from the hotel showing Force, Morales, and Spencer together at the check-in counter. The Walgreens receipt duplicates what Chorzepa observed. And the metal plate is not necessary to tie the Audi to the Mazda because significant testimony established Force, Morales, and Spencer used the cars to travel together in tandem to Arizona and back.

¶ 41    Spencer cannot satisfy his burden under *Strickland* that a motion to suppress the evidence would have been granted or a reasonable probability exists the outcome of his trial would have been different had the evidence been suppressed. We reject his ineffectiveness claim.

¶ 42              *Counsel's Failure to Move to Produce the Identity of the Confidential Source*

¶ 43    Spencer next argues that counsel was ineffective for failing to ascertain the confidential source's identity. Several factors guide a trial court's determination whether to mandate disclosure of a confidential source's identity: (i) whether the request for disclosure relates to the fundamental question of guilt or innocence rather than the preliminary issue of probable cause; (ii) whether the confidential source played an active role in the criminal act; (iii) whether the confidential source assisted in setting up the criminal act's commission; and (iv) whether it has been shown that the confidential source's life or safety would likely be jeopardized by disclosure. *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 35 (quotation omitted). We view these factors while balancing the "strong public policy reasons favoring non-disclosure of an informant * * * against a petitioner's need for disclosure in order to prepare his defense, or where disclosure is essential for a fair determination of a cause." *People v. McBee*, 228 Ill. App. 3d 769, 773 (1992).

¶ 44    Spencer correctly points out that "the entire investigation was based on the information provided by a confidential source," recognizing that "[t]he credibility and conduct of the [confidential source] bears directly on the issue of probable cause to arrest." But where the issue is probable cause and guilt or innocence is not at stake, the nondisclosure of a confidential source's identity does not amount to error. *McBee*, 228 Ill. App. 3d at 773 (citing *McCray v. Illinois*, 386 U.S. 300, 311 (1967)).

¶ 45    Spencer has not shown the confidential source participated in or witnessed the essential elements of the offense. See, *e.g.*, *People v. Gales*, 248 Ill. App. 3d 204, 222 (1993). Pointing to

*Hannah*'s disclosure factors, Spencer infers from the "specificity of the information" provided to the DEA "that there is a possibility the [confidential source] was more than a mere tipster." He also says, "the amount of detail suggests that the [confidential source] could have provided relevant testimony at trial regarding Spencer's charged offense." The operative phrase is "could have" because no evidence indicates that the source provided information beyond the initial tip. Spencer's argument amounts to conjecture, which cannot support a *Strickland* claim. *E.g., People v. Bew*, 228 Ill. 2d 122, 135 (2008) ("*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice.").

¶ 46 Our supreme court does not require production of a confidential source unless the failure to disclose would infringe on a defendant's constitutional rights. Ill. Sup. Ct. R. 412(j)(ii) (eff. Mar. 1, 2001). A defendant who moves to compel disclosure of a confidential source bears the burden of showing that disclosure is needed to prepare a defense. *People v. Clark*, 2013 IL App (2d) 120034, ¶ 33. To meet that burden, the defendant must show the defense theory relied on to obtain the confidential source's identity depends on evidence rather than speculation. *Id.* Because Spencer has not done so, we find the unfiled disclosure motion meritless, and Spencer cannot meet his burden under *Strickland*.

¶ 47 *Counsel's Failure to Produce Additional Mitigation at Sentencing*

¶ 48 We rejected Spencer's claim that he received an excessive sentence on direct appeal. *Spencer*, 2016 IL App (1st) 151254, ¶¶ 39 (finding trial court did not abuse its discretion). We noted that "[w]here the trial court contemplated all the relevant factors, we will not reweigh the evidence." *Id.* (citing *People v. Snyder*, 2011 IL 111382, ¶ 36). Now, Spencer submits additional mitigation evidence, suggesting no strategy supports trial counsel's presentation of only one live witness and five character letters. His affidavit reveals that he asked trial counsel to obtain

additional character letters and provided names of friends and family to contact. But whether to call certain defense witnesses involves trial strategy left to counsel's discretion after consultation with the defendant. *People v. Peterson*, 2017 IL 120331, ¶ 80. As such, these decisions do not ordinarily support claims of ineffective assistance of counsel. *Id.* We cannot say that trial counsel's performance at sentencing was "so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." *E.g., People v. Lewis*, 2015 IL App (1st) 122411, ¶ 85 (explaining how defendant can overcome strong presumption that trial counsel's choice of strategy was sound). In turn, Spencer cannot show *Strickland* prejudice.

¶ 49    In addition, Spencer again opines that he would have received a lower sentence if convicted under federal law—this time, however, through the lens of trial counsel's effectiveness rather than the trial court's supposed abuse of discretion. We have already found the argument itself interesting but wholly irrelevant. *Id.*, ¶ 40. Still, he claims "[c]ounsel had no strategic reason" for failing to make the argument. *Strickland* prejudice requires a defendant to show "actual prejudice, not simply speculation that [he or she] may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81; *People v. Gosier*, 165 Ill. 2d 16, 24 (1995). We do not dwell on trial counsel's failure to raise a meritless argument because, once more, Spencer cannot establish the requisite prejudice. See, *e.g.*, *People v. Edgeston*, 157 Ill. 2d 201, 234 (1993) (counsel under no duty to make meritless arguments).

¶ 50    Affirmed.